IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DARREYLL T. THOMAS,

Plaintiff,

v.

ROMAN KAPLAN, DALIA SULIENE,
KAREN ANDERSON and MICHAEL MEISNER,

Defendants.[1]

OPINION and ORDER

14-cv-675-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se prisoner Darreyll Thomas is proceeding on several claims under the Eighth Amendment and state negligence law for the alleged failure of defendants Roman Kaplan, Dalia Suliene, Karen Anderson and Michael Meisner to provide him appropriate medical care. In particular, he says that he complained to all of the defendants throughout 2012 about pain caused by a bullet that was lodged in his spine before his incarceration, but they either ignored his complaints or persisted in providing ineffective treatment.

Both sides have filed motions for summary judgment, dkt. ##35 and 41, and those motions are ready for review. I am denying plaintiff's motion because he has not proven any of the elements of his claims as a matter of law. I am denying defendants' motion with

[1] In his complaint, plaintiff named "Micheal Miesner" and "Dahlia Suliene" as defendants. I have amended the caption to reflect the proper spelling of these defendants' names, as reflected in defendants' summary judgment submissions.

respect to defendants Kaplan and Suliene because it is not clear whether either of those physicians used medical judgment in determining whether and how to treat plaintiff. In particular, neither Kaplan nor Suliene provided any explanation for *why* they made the treatment decisions they did. Unfortunately, this failure to explain is all too common in cases like this one regarding the medical care of prisoners. It is entirely possible that just a straightforward explanation in an affidavit or declaration of the medical bases for the decisions of health care providers could avoid the need for trial in some cases, at least in the absence of contrary evidence. However, on the current record in this case, a trial is needed to determine whether defendants Kaplan and Suliene acted unreasonably or consciously disregarded plaintiff's serious medical need.

I reach a different conclusion with respect to defendants Anderson and Meisner. Because those defendants relied reasonably on defendant Suliene's treatment decisions and had no authority to override those decisions, I am dismissing plaintiff's claims against Anderson and Meisner.

In accordance with 28 U.S.C. § 1915(e)(1), I will attempt to recruit a lawyer to represent plaintiff at trial on his remaining claims.

Finally, I note that the scope of the decision on summary judgment is limited to the treatment that defendants provided plaintiff in 2012. For reasons that plaintiff does not explain, he does not discuss any aspect of his medical care after 2012, even though it does not appear that his medical concerns were resolved at that time. Although defendants say that an MRI in 2014 confirmed the existence of a bullet, neither side discusses plaintiff's

condition after 2012 or other treatment that he has received since then. It may be that plaintiff is satisfied with his current treatment, but if he believes that officials are not providing adequate treatment now, that issue will have to be raised in a separate lawsuit.

## OPINION

Plaintiff is proceeding on the following claims: (1) defendant Roman Kaplan refused to examine him, treat his pain or place restrictions on his work at the prison, in violation of the Eighth Amendment and state negligence law; (2) defendant Dalia Suliene failed to provide appropriate pain medication, special shoes, a referral to a specialist or other treatment, in violation of the Eighth Amendment and state negligence law; (3) defendants Michael Meisner and Karen Anderson refused to take reasonable measures to help plaintiff with his medical problems, in violation of the Eighth Amendment and state negligence law. Again, neither side discusses any involvement that defendants had in plaintiff's care after 2012, so I have limited my consideration to 2012.

## I. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I can resolve plaintiff's motion for summary judgment without extended discussion. Plaintiff's brief in support of his motion is divided into four sections: (1) defendants are not entitled to qualified immunity; (2) defendants are not entitled to sovereign immunity; (3) defendants were all personally involved in violating his rights; (4) defendants Meisner and Anderson failed to intervene on plaintiff's behalf.

Defendants do not dispute most of the issues that plaintiff is raising in his brief, but that does not mean that he is entitled to summary judgment. To succeed on a motion for summary judgment, plaintiff would have to show that there are no genuinely disputed facts with respect to any of his claims against any of the defendants. Fed. R. Civ. P. 56. Because plaintiff's brief is simply a summary of various legal principles without any discussion of the elements of his claims or the facts that he needs to prove, I am denying his summary judgment motion.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Legal Overview

#### 1. Eighth Amendment

A prison official may violate the Eighth Amendment if the official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006). The condition does not have to be life threatening. Id. A medical need may be serious if it "significantly affects an individual's daily activities," Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997), if it causes significant pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994). "Deliberate indifference" means that the officials are aware that the

prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).

Thus, under this standard, plaintiff's claim has three elements: (1) did plaintiff need medical treatment? (2) did defendants know that plaintiff needed treatment? and (3) despite their awareness of the need, did defendants consciously fail to take reasonable measures to provide the necessary treatment? On a motion for summary judgment, it is plaintiff's burden to show that a reasonable jury could find in his favor on each of these elements. Henderson v. Sheahan, 196 F.3d 839, 848 (7th Cir. 1999). In their summary judgment motion, defendants do not deny that plaintiff had a serious medical need or that they were aware of that need, so I will not consider those issues. Instead, the question is whether a reasonable jury could find that defendants consciously failed to take reasonable measures to treat plaintiff.

2. State law

Wisconsin law defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." Sawyer v. Midelfort, 227 Wis.2d 124, 149, 595 N.W.2d 423, 435 (1999); Schuster v. Altenberg, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161–62 (1988). Like all claims for negligence, a claim for medical malpractice includes the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. Paul v. Skemp, 2001 WI 4217, 242 Wis. 2d

507, 625 N.W.2d 860 (2001). Thus, to establish a prima facie medical negligence claim, plaintiff must show that defendants failed to use the required degree of skill exercised by an average respective medical professional, that plaintiff was harmed and that there is a causal connection between defendants' failure and plaintiff's harm. Wis J–I Civil 1023.

B. Roman Kaplan

Defendant Kaplan is a physician employed at the Dodge Correctional Institution. He examined plaintiff on February 29, 2012, a few weeks after plaintiff arrived at the Dodge prison. During the exam, plaintiff told Kaplan that he was experiencing back pain because of a bullet in his spine. (Plaintiff says that he suffered two gunshot wounds, one in 2005 and another in 2010, both while he was not incarcerated. Although he says that both of the bullets are inside his body, he believes that the bullet from 2010 is lodged in his spine.) According to plaintiff, Kaplan's response to plaintiff's complaint was to tell plaintiff to "stop lying." Plaintiff says that Kaplan did not perform a physical examination and refused to prescribe pain medication or place any work restrictions on plaintiff. (Plaintiff's version of events comes primarily from his verified complaint, which is admissible evidence in the context of a motion for summary judgment. Devbrow v. Gallegos, 735 F.3d 584, 587 (7th Cir. 2013). In his proposed findings of fact, plaintiff discusses more complaints that he made while he was still at the Dodge prison, but he does not connect those allegations to defendant Kaplan or any other defendant, so I have not considered those.)

In his declaration, Kaplan admits that plaintiff "complained of chronic upper back

pain subsequent to a self-reported gunshot wound to his chest two years prior to the exam." Kaplan Dec. ¶ 7, dkt. #47. However, Kaplan does not respond directly to most of plaintiff's other allegations. He says only that "[t]he examination was negative for this problem and I issued no further orders at that time related to Mr. Thomas's back. Had I believed that additional orders were warranted at that time, I would have taken the steps to implement them." Id.

Kaplan's statement is not helpful because he fails to explain how he determined that plaintiff was not suffering from a bullet wound or otherwise suffering from pain and he does not explain why he did not order any followup care. Without that explanation, I cannot say as a matter of law that Kaplan was using medical judgment when he refused to provide treatment to plaintiff. King v. Kramer, 680 F.3d 1013, 1018-19 (7th Cir. 2012) ("A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.") (internal quotations omitted); Trogun v. Fruchtman, 58 Wis. 2d 569, 584, 207 N.W.2d 297, 305 (1973) (physician may be held liable for malpractice "if he fails to exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances"). For this reason, I am denying defendants' motion for summary judgment as it relates to plaintiff's Eighth Amendment claim and state law claim against Kaplan.

Defendants argue that plaintiff cannot prevail on his state law claim against defendant

Kaplan because plaintiff does not have an expert, but an expert is not a requirement when "an ordinary person could conclude from common experience" that the defendant did not use ordinary care and harmed the plaintiff. Gil v. Reed, 535 F.3d 551, 557-58 (7th Cir. 2008). Because plaintiff is alleging that Kaplan refused to provide any treatment without any medical basis for doing so, I conclude that plaintiff does not need an expert at this stage of the case.

C. Dalia Suliene

1. Background

On April 5, 2012, plaintiff was transferred to the Columbia Correctional Institution. On April 13, 2012, defendant Suliene, a physician at the Columbia prison, met with plaintiff to address complaints of back pain that he said was caused by a gunshot wound. (Plaintiff suggests in his proposed findings of fact that he should have been seen by a doctor before April 13, but he does not say that Suliene or any other defendant is responsible for any delay, so I have not considered that issue.) After her examination, Suliene prescribed salsalate and amitriptyline for plaintiff's pain and she ordered x-rays and a physical therapy evaluation. In addition, she placed plaintiff on a "no work" status. (Defendants do not say whether Suliene believed plaintiff's account or why she chose the treatment she did.)

On April 24, 2012, defendant Suliene received a health service request from plaintiff in which he complained that the pain medication was not working. In a response the same day, Suliene wrote, "It may take a little time." In addition, she told plaintiff to "exercise to

strengthen your body." Also the same day, Suliene reviewed plaintiff's x-rays. She saw that "[t]he radiologist determined that there was no active disease in Mr. Thomas's chest, no fracture or dislocation in the thoracic spine, a normal lumbar spine, and a normal cervical spine; the radiologist saw no radiopaque foreign body seen via x-ray in Mr. Thomas's back." Suliene Dec. ¶ 24, dkt. #50. (Defendants do not say what conclusion, if any, Suliene drew from the x-ray results.)

On May 7, 2012, plaintiff wrote Suliene again, telling her that the medication still was not working. In her response, Suliene said that "nothing is going to happen quickly." She instructed plaintiff to continue stretching and exercising and reminded him to take his medication "at least" twice a day. In addition, she said he could have extra Tylenol if he needed it.

In a health service request dated May 12, 2012, plaintiff told Suliene that he had extreme pain and could not sleep. In response, an appointment with Suliene was scheduled. At an appointment on May 22, 2012, defendant Suliene chose to discontinue salsalate and prescribed gabapentin and naproxen. In addition, she renewed her order for physical therapy.

On June 26, 2012, defendant Meisner forwarded to defendant Suliene a letter from plaintiff in which he alleged that he needed to see a specialist because he was in extreme pain from a bullet that was lodged in his spine. The same day, Suliene referred plaintiff to physical therapy. (The parties do not say what happened to Suliene's previous orders for physical therapy.)

In a health service request dated September 3, 2012, plaintiff told defendant Suliene that he needed to see an orthopedist because he is "on the floor in pain." (Apparently, this request is related to an alleged decision to require plaintiff to sleep on a mattress on the floor. Plaintiff does not allege that Suliene was responsible for that decision.) In response, Suliene wrote that plaintiff was scheduled to see a physical therapist and receive a steroid injection "at UW." (The parties do not say whether plaintiff ever received a steroid injection.) The following day, plaintiff wrote back, saying that he believed that "physical therapy could be detrimental to [his] health" and that "[r]emoval or manipulation could lead to paralysis."

In a health service request dated September 14, 2012, plaintiff wrote that he was "still [sleeping] on the floor" and "in excruciating pain" as a result. Because defendant Suliene did not have authority over plaintiff's cell conditions, she referred his request to the special needs committee. (The parties do not explain the purpose of the special needs committee or the scope of its authority, but, in other cases, officials have described the committee as a body that makes determinations regarding requests for a medical accommodation when the accommodation involves cell conditions or could have security implications. E.g., Lewis v. Sweeney, No. 13-cv-457-bbc, 2014 WL 5361949, at *3 (W.D. Wis. Oct. 21, 2014) (request for different kind of restraints); Williams v. Meier, No. 11-cv-407-wmc, 2013 WL 5409058, at *4 (W.D. Wis. Sept. 25, 2013) (request for low bunk restriction); Brown v. Schrubbe, No. 10-cv-129-bbc, 2010 WL 3666993, at *6 (W.D. Wis. Sept. 15, 2010) (request for extra mattress).)

In a health service request dated September 24, 2012, plaintiff again asked Suliene to send him to an orthopedist for his back pain. In response, defendant Suliene wrote that plaintiff had been seen by a physical therapist three days earlier to address his pain.

In a health service request dated September 27, 2012, plaintiff told defendant Suliene that the physical therapy was causing more pain. He also complained about a rash. In her response, Suliene did not address plaintiff's complaint about physical therapy.

In a health service request dated September 30, 2012, plaintiff told defendant Suliene again that the physical therapy was causing more pain and he asked to see an orthopedist. In response, Suliene stated that he could discuss any issues with her at a followup appointment after he completed his physical therapy.

On November 21, 2012, the physical therapist chose to discontinue therapy for lack of progress. The therapist wrote that plaintiff was "unable to do any exercise for fear that the remaining bullet fragment in his spine will cause spinal cord damage."

In a health service request dated December 4, 2012, plaintiff stated that he wanted to purchase his own shoes because the shoes provided by the prison were exacerbating his back pain. Suliene referred plaintiff's request to the special needs committee.

After this, defendant Suliene had no more involvement in treating plaintiff's back pain before her retirement in 2013.

2. Analysis

I allowed plaintiff to proceed on claims that defendant Suliene violated plaintiff's

Eighth Amendment rights by failing to provide appropriate pain medication, special shoes, a referral to a specialist or other appropriate treatment. Unlike Kaplan, defendant Suliene made attempts to treat plaintiff's pain in various ways from the day she first examined him until she retired the following year. In particular, she placed him on a "no work" restriction, ordered physical therapy and prescribed several different kinds of pain medication.

However, as with Kaplan, defendant Suliene does not explain *why* she took the actions she did. Her declaration describes the treatment she prescribed, but not why she chose particular medications over others or why she determined that physical therapy would be useful. She simply provides *no* justification for her actions. Including such explanations might not always be enough to support a grant of summary judgment, but omitting them is almost sure to result in a denial of the motion. Without an explanation, it is impossible to determine whether Suliene used medical judgment in deciding to defer a consultation with a specialist until after plaintiff completed physical therapy or to reject plaintiff's requests for different medications. With respect to plaintiff's request for special shoes, Suliene says only that she referred plaintiff's request to the special needs committee. She does not say why she did this and she does not say that she lacked authority to grant his request. Accordingly, I am denying defendants' motion for summary judgment as to defendant Suliene with respect to plaintiff's claims under the Eighth Amendment and state law.

In his summary judgment materials, plaintiff raises another issue, which is that he seems to blame Suliene because, for a time, he was required to sleep on a mattress on the floor. I did not allow plaintiff to proceed on that claim in the screening order and plaintiff

did not seek reconsideration of that issue. In any event, even if I consider the merits of the claim and assume that sleeping on the mattress exacerbated plaintiff's back pain, plaintiff cannot prevail on the claim because he does not cite any evidence that Suliene was involved in making decisions about plaintiff's sleeping conditions. When plaintiff complained to Suliene, she referred his complaint the special needs committee because she did not have authority to help him. Under these circumstances, Suliene cannot be held liable for violating plaintiff's rights. Miller v. Harbaugh, 698 F.3d 956, 962 (7th Cir. 2012) ("[D]efendants cannot be [held liable under the Eighth Amendment] if the remedial step was not within their power.").

D. Karen Anderson

1. Background

Defendant Karen Anderson is a nurse. She was the health services unit manager for the Columbia prison during the events relevant to this case. As the health services unit manager, Anderson was responsible for "management and supervision of health care services provided, developing procedures, monitoring care plans, preparing required reports and providing liaison activities to other disciplines, institution units and community health care providers." Dfts.' PFOF ¶ 11, dkt. #44. In addition, she and the nursing supervisor "provide[d] the overall administrative support and direction of the unit" and "monitor[ed] nursing practice documentation in medical records." Id. at ¶ 12. Anderson did not have authority to override the health care decisions of physicians, prescribe medications or refer

a prisoner to a specialist.

In a health service request dated May 16, 2012, plaintiff told defendant Anderson that he was in "tremendous" pain as the result of a 2010 bullet wound and that he had been prescribed medication "to no avail." In response, health services staff wrote that plaintiff was scheduled to be seen by a doctor in the health services unit. (As noted above, defendant Suliene had an appointment with plaintiff on May 22, 2012.)

In a health service request dated May 30, 2012, plaintiff asked defendant Anderson to refer him to "an outside doctor" because he was "still in tremendous pain." In response, health services staff noted that plaintiff had been seen by a doctor on May 22 and staff directed plaintiff to follow the doctor's recommendations for treatment until his followup appointment.

In a health service request dated June 14, 2012, plaintiff told Anderson that he believed that his rights were being violated because he was "still in extreme pain." In a response on the same day, health services staff summarized the care that plaintiff had received for his pain. In addition, staff noted that plaintiff had a followup appointment scheduled with the doctor the next month.

In a health service request dated June 25, 2012, plaintiff told defendant Anderson that he "need[ed] to see a back specialist." In a response dated June 26, 2012, health services staff scheduled an appointment with the doctor. (The parties do not say whether Suliene examined plaintiff at that time, but, also on June 26, 2012, Suliene prescribed physical therapy for plaintiff.)

It does not appear that Anderson signed any of the responses to plaintiff's health service requests. However, defendants do not argue that Anderson was unaware of the requests discussed above, so I will assume for the purpose of defendants' summary judgment motion that Anderson was personally involved in deciding how to respond to the requests.

2. Analysis

Plaintiff cannot prevail on his Eighth Amendment claim against defendant Anderson for multiple reasons. First, the general rule is that administrators and nurses like Anderson are entitled to defer to physicians such as defendant Suliene. King, 680 F.3d at1018; Holloway, 700 F.3d at 1075-76. There is an exception to the rule when it is obvious that the physician is not providing proper care. Id. However, plaintiff does not identify any reason why it should have been obvious to Anderson that Suliene was violating plaintiff's rights, so I cannot say that Anderson's decision to defer to Suliene was a violation of the Eighth Amendment. In any event, even if defendant Anderson wanted to prescribe different treatment, she did not have the authority to do so.

In his verified complaint, plaintiff alleges that he sent a letter to defendant Anderson on May 8, 2012, but that it was returned to him without a response. However, plaintiff cites no evidence that Anderson ever received or reviewed that letter. (It may be that staff returned the letter because plaintiff did not use a health service request form.) Even if Anderson saw the letter, the other responses from the health services unit indicate that the response would have been the same as the others, which is to schedule an appointment with

defendant Suliene or instruct plaintiff to follow Suliene's prescribed treatment. Because plaintiff was receiving treatment from Suliene, one failure to respond to a health services request would not violate the Eighth Amendment.

Plaintiff's negligence claim against defendant Anderson fails for similar reasons. Because defendant Anderson did not have a reason to question Suliene's judgment and she did not have authority to overrule Suliene's decisions, Anderson was not negligent.

### E. Michael Meisner

Defendant Michael Meisner was the warden of the Columbia prison during the relevant time. His only involvement in this case was that he received a letter from plaintiff in June 2012 in which plaintiff wrote that he needed to see a back specialist because he had a bullet lodged in his spine and was in "extreme pain." In response, Meisner referred plaintiff's letter to defendants Suliene and Anderson. Because Meisner is not a health care professional and he had no reason to question the judgment of defendant Suliene or defendant Anderson, defendant Meisner is entitled to summary judgment under the Eighth Amendment and state law.

### F. Assistance in Recruiting Counsel

Last year, plaintiff filed a motion for assistance in recruiting counsel under 28 U.S.C. § 1915(e)(1). The standard for that type of motion is whether the legal and factual difficulty

of the case exceeds the plaintiff's ability to prosecute it.  Pruitt v. Mote, 503 F.3d 647, 654, 656 (7th Cir. 2007).  Although I denied plaintiff's motion because it was too early to tell then whether the standard in Pruitt was satisfied, I am persuaded now it is appropriate to help plaintiff find counsel.

Plaintiff's summary judgment materials showed he has difficulty understanding the law and following court procedures.  As noted above, plaintiff completely misunderstood his burden with respect to his own summary judgment motion.  In addition, he did not file a meaningful response to any of defendants' proposed findings of fact.  Particularly because the trial in this case may require an evaluation of complex medical issues, I have doubts whether plaintiff is up to the task of representing himself at trial.  Accordingly, I am staying the case while I look for counsel to represent plaintiff.


ORDER

IT IS ORDERED that

1. Plaintiff Darreyll Thomas's motion for summary judgment, dkt. #35, is DENIED.

2.  The motion for summary judgment filed by defendants Roman Kaplan, Dalia Suliene, Karen Anderson and Michael Meisner, dkt. #41, is DENIED with respect to defendants Kaplan and Suliene.  The motion is GRANTED with respect to plaintiff's claims against defendants Anderson and Meisner and plaintiff's complaint is DISMISSED as to those two defendants.

3.  The proceedings in this case are STAYED pending recruitment of counsel for

plaintiff. If I find counsel willing to represent plaintiff, I will advise the parties of that fact. Soon thereafter, a status conference will be held to determine whether adjustments to the schedule are needed to allow the parties to prepare for trial.

Entered this 29th day of July, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge